## PAULDING *vs.* WATSON AND EIDSON.

1. An answer which denies the allegations of the bill upon information merely, and calls for proof of them, does not require the proof of two witnesses, or of one witness with corroborating circumstances, to overcome the force of its denial.

2. A bill was filed to enjoin a judgment at law, founded on a note alleged to have been given for a gaming consideration; and the defendant, who was an assignee of the note, denied the alleged gaming consideration, upon information merely, and called for proof. The note, which was for $1030, was dated Sept. 17, 1836, and payable January 1, 1837; and the bill was filed in 1845. The only witness examined as to the consideration, testified, that, in the spring of 1836, he was present at a certain place while the maker and payee of the note were playing at cards, and that the maker then gave to the payee, on account of his losses at cards, his promissory note "for one thousand dollars, perhaps a few dollars more;" that the note was dated at the time of the transaction, but witness did not recollect when it was payable. The witness also testified, that the payee of the note was a gambler and a horse-racer. *Held:*

That, in the absence of all proof showing other transactions between the maker and payee in which the former gave his note to the latter, the testimony of this witness was, of itself, sufficient to outweigh the formal denial of the answer, and establish the identity of the note which he saw executed with that on which the judgment was founded.

3. The right to enjoin, by bill in equity, a judgment at law founded on a note given for a gaming consideration, is not limited by the analogy between such a bill and a bill of review, to three years from the date of the judgment.

4. Where a bill is filed to enjoin a judgment at law, and no release of errors is filed, the Chancellor can do no more than dissolve the injunction on that account; he cannot dismiss the bill for that reason.

5. Where defendant suffered judgment by default to be rendered against him, on a note founded on a gaming consideration, and, after the lapse of more than seven years, filed a bill in equity to enjoin it, and showed no excuse for his neglect or delay, he was taxed with the costs, both of the Court of Chancery and the Appellate Court, and the judgment was perpetually enjoined.

ERROR to the Chancery Court of Greene.

Heard before Hon. W. W. MASON.

This bill was filed by Paulding, against Watson and Eidson, to enjoin a judgment at law recovered by them against the complainant, on a note which he alleges was founded on a gaming consideration. The bill was filed in June, 1845, and the note on which the judgment was founded, was for $1030, dated September 17, 1836, payable January 1, 1837, to said Eidson, or bearer, and by him transferred to said Watson. The judgment was rendered by default, in March, 1838.

A decree *pro confesso* was taken against Eidson. Watson answered the bill, admitting that he purchased said note from Eidson, but denying that he had any knowledge of said note having been given by Paulding on a gaming consideration, if the fact were so; he does not profess to have any personal

knowledge on that subject, but, upon information and belief, denies that allegation of the bill to be true, and calls for proof.

The only witness who testifies as to the making and consideration of the note, is Thomas H. Nelms. He testifies, that he has known Paulding since 1835, and Eidson since 1833; that Eidson was a gambler and a horse-racer; that sometime in the spring, he thinks, of 1836, he was in company with Eidson, at Greensboro', Ala., at the time of the races; that Paulding and Eidson were engaged there at that time in playing cards; that said Paulding was the loser, and gave to Eidson, on account of his losses at cards, his promissory note "for one thousand dollars, perhaps a few dollars more;" that he saw the note, and Eidson afterwards told him that he had won one thousand dollars from Paulding, and had his note for it; that the note was dated at the time of the transaction, but he does not recollect when it fell due; that he does not know to whom Eidson sold the note, nor for what amount, except from what Eidson told him; that soon after Eidson obtained said note from Paulding, witness saw him with a sum of money a little over one half the amount of the note.

In December, 1846, a motion was made before the Chancellor, to dissolve the injunction, on the ground that no release of errors had been filed; but the motion was refused, upon its being shown that the release had been filed, through mistake, among the papers of the cause in the Chancery Court, instead of the Circuit Court; and leave was granted to the complainant to file it in the Circuit Court, which was subsequently done.

The Chancellor dismissed the bill for want of sufficient proof, and dissolved the injunction, giving judgment for costs against the complainant and his securities. This decree is now assigned for error.

JOHN, for plaintiff in error:

1. The testimony of one witness was sufficient to sustain the bill against such denial as in this answer; the defendant stating in his answer that he has no knowledge of the facts charged. Newman v. James & Newman, 12 Ala. 29, 35; Manning v. Manning et al., 8 Ala. 138.
19

2. The bill describes a note, its transfer and judgment thereon. The answer admits the note, the transfer and judgment as described in the bill, and simply calls for proof of the consideration of the note described in the bill and answer. It is nowhere intimated that there was any other note or any other playing. The witness proves the playing, as laid, at the place, but states from recollection, after a lapse of many years, a date different from the true date of the note described in the bill and answer. But it is clear from the circumstances stated, the amount of the note, the gaming, &c., that he is speaking of this identical note described in the bill. It would be unreasonable to expect him to recollect the precise date, nor is it necessary.

3. If Watson intended to insist that there was any other note of the same kind, or between the same parties, he should have stated it in his answer, or shown it by proof. Watson never purchased any but the one described, and it is clear from the testimony that the note the witness spoke of, was the note that Watson purchased. The complainants had nothing to prove but the consideration. Every other material allegation was admitted by the answer. The witness fully establishes the gaming consideration of the same note given by Paulding to Eidson, which was transferred to some one, for about the sum stated in the bill and answer, and proves that he saw Eidson have the note several times, and then saw him have about the sum of money that Watson says he gave for the note. Can there be any doubt that the note described in the bill, answer, and the deposition of the witness, is the same instrument, and no other or different. To draw a different conclusion, would be to found presumptions on nothing; to do violence to all the rules of evidence in regard to presumptions from facts proven.

4. There can be no doubt that the proof makes at least a *prima facie* case, and therefore the decree should have been for the complainant, unless the defendant had by some proof rebutted the *prima facie* case made by the complainant. Watson might by his cross interogatories have made the testimony more certain; but failing to do so, or take any testimony, he cannot take any advantage of the indefiniteness of the answers.

5. The fact that no release of errors was filed till after the injunction issued, cannot effect the dismissal of the bill on final hearing. The injunction might have been dissolved because no release of errors had been filed. But the bill itself could not be dismissed for this reason. If it could, no motion was made to dismiss in the court below. Therefore this irregularity was waived, and cannot now be raised for the first time.

The statute declares this judgment at law absolutely void, if founded on a gaming consideration. The dissolution of the injunction, if it had been granted, would not have dismissed the bill. Administrators of Reynolds v. Pharr & Beck, 9 Ala. 560.

WATTS, JUDGE & JACKSON, for defendants in error:

1. The statute is imperative, that no judgment at law shall be enjoined, unless the defendant in the judgment shall first sign and seal a release of errors in such judgment, and file the same in the office of the clerk of the court in which such judgment shall have been obtained. See Clay's Dig. 357, §76. And a motion was made to dissolve the injunction on this ground in the court below.

2. The proof does not support the allegations of the bill. The bill charges, that the note sued on was for a gaming consideration, and alleges the time and circumstances of making it. This is denied by the answer. The only proof introduced is the deposition of Nelms; and his testimony shows that Paulding and Eidson played cards together in the spring of 1836. He heard Eidson say that he had won about a thousand dollars from Paulding, and that he had got his note; and that he heard Eidson say that he had sold the note. Now this last declaration would be no evidence against Watson, if it was proven that this was the same note. And, indeed, none of the declarations of Eidson can be received or weighed as evidence against Watson, until the identity of the note is established. Then, his declarations before he traded the note might be evidence. But the testimony, even taking the declarations of Eidson as evidence against Watson, describes a different note from that sued on. The date is not the same as that described; the time of playing is different, and the

amount of the note is not described. The note sued on is dated the 17th day of Sept., 1836, due 1st of Jan., 1837.

3. The conduct of Paulding in neglecting to avail himself of his legal defence, and waiting so many years after the rendition of the judgment before he proceeds to enjoin, are very persuasive evidence to show that the note sued on is not the one which was given for the gaming consideration. At any rate, it was the duty of the complainant to establish the fact by competent and sufficient proof. He has failed to do this, and is not entitled to a decree.

The allegations of his bill and the proof do not correspond, and for this reason, if for no other, he cannot have a decree.

4. Under the statute giving the Court of Equity power to enjoin (in a gaming case) a judgment at law, the remedy cannot be considered anything more than a right to have a new trial by way of bill of review; and by analogy to bills of review strictly, the bill must be filed within three years from the time of the judgment. In this case, it was more than seven years from the time of rendering the judgment, before the filing of the bill.

PHELAN, J.—The answer of the defendant Watson denies his having any personal knowledge of the true consideration of the note in question, and amounts only to such a formal denial of the allegation of the bill upon that subject, as puts the complainant to the necessity of making ordinary proof only. It does not require the proof of two witnesses, or of one witness with corroborating circumstances, to overcome the force of such a denial in an answer as this. 12 Ala. 29; 9 Ala. 560.

The only question, then, upon which the decision of the case must rest, is, the weight to be given to the testimony of the witness, Thomas Nelms, as tending to establish the identity of the note purchased by the defendant Watson of the other defendant, Eidson, upon which suit was brought and the judgment recovered against the complainant, Paulding, which he now seeks to enjoin, upon the ground that it was given for a gaming consideration. It is a pure question as to the weight of evidence. The Chancellor was of opinion that the testimony did not satisfactorily prove the identity of the note de-

scribed by the witness, Nelms, with the note on which the judgment at law was recovered. In this we are compelled to differ from the court below. With the exception of the date of the note, or the time at which it was made, the identification in every other essential particular, is quite convincing to show that the note in question and the note which the witness saw, and which was given on a gaming consideration, are the same, especially, in the absence of all proof going to show that there were other transactions between Paulding and Eidson, in which a note was made from the former to the latter. What Eidson said after the note passed from his possession, is not noticed in coming to this conclusion.

The position assumed by the counsel for the defendant in error, that a bill in a case like the present should be likened to a bill of review, and bound by the same rules, and that therefore it should not be entertained if filed after three years after the date of the judgment sought to be enjoined, cannot be supported. The right to defend against a note given on a gaming consideration, at law, or, if the party fails or neglects to do this, to assail the judgment afterwards on that ground by bill in equity, is conferred by statute, (Clay's Dig. 350,) and it will not do to limit the extent of the latter right, by an implication depending for its force upon the supposed analogy between such a bill and a bill of review.

It appears from the record that a release of errors had been executed, and upon a motion to dissolve the injunction for want of such a release, the Chancellor allowed the release, which had been filed by mistake in the papers of the cause in Chancery, to be then withdrawn and filed in the Circuit Court. The decree of the Chancellor dismissing the bill was not put upon this ground at all, and could not be sustained if it were. Even if there had been no release filed, he could go no further than to dissolve the injunction on that account.

Under the view which we take of the proof in the cause, the decree of the Chancellor dismissing the bill must be reversed, and a decree rendered here perpetuating the injunction of the judgment at law ; but in consideration of the neglect of Paulding to make his defence at law, for which no excuse has been shown, and his long delay in filing his bill, he will be taxed with the costs which have been incurred in this

proceeding, as well in this court as in the court below, and the clerk will enter judgment accordingly.